IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| FRANK FLUELLEN, | : | CIVIL ACTION |
| --- | --- | --- |
| Petitioner, | : | |
| v. | : | |
| JOHN KERESTES, et al., | : | No. 12-6751 |
| Respondents. | : | |

## REPORT & RECOMMENDATION

**TIMOTHY R. RICE**                                                                  January 14, 2013
**U.S. MAGISTRATE JUDGE**

Petitioner Frank Fluellen, a prisoner at the State Correctional Institution in Mahanoy, Pennsylvania, has filed a pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("Habeas Petition"). For the following reasons, I respectfully recommend Fluellen's claims be denied with prejudice as meritless, noncognizable, and procedurally defaulted.

## FACTUAL AND PROCEDURAL HISTORY

On July 26, 2002, a Philadelphia jury convicted Fluellen of second-degree murder, aggravated assault, kidnapping, criminal conspiracy, possession of an instrument of a crime, and two counts of robbery. See Commonwealth v. Fluellen, CP-51-CR-210662-2001, Crim. Dkt., at 5-7. The convictions stemmed from an August 22, 1994 store robbery and related shootings that caused the death of the store's owner, Asley Espuet, and injuries to the store's manager, Skirvy Powell. See Commonwealth v. Fluellen, 2422 EDA 2002, 1/30/2004 Pa. Super. Op., at 1.

The evidence at trial included testimony from two co-conspirators, Travis Hall and Jermaine Williams, who each made statements to the police and agreed to testify about the crime after being arrested on separate federal charges. Tr. 7/22/2002, at 1339-40, 1453-54. They

testified that Fluellen asked Hall to drive him and several other men to Espuet's store to steal money and drugs.[1] Id. at 1309-1315, 1436-41. Williams, Hall's friend, joined the group as they boarded a van with guns, duct tape, and rope. Id. at 1317-20, 1437-41, 1455. Upon arriving at the store, Fluellen and several of the other men entered wearing masks and gloves. Id. at 1327-29, 1444-45. They left the store several minutes later, pulling Espuet into the van. Id. at 1330-31, 1445-1447. As Hall drove away, Fluellen and the others struggled with Espuet. Id. When he could not be subdued, Espuet was shot several times, including once in the head.[2] Id. at 1335-36, 1447-48. The men threw Espuet's body in the street and drove away. Id. Later that night, Fluellen, Hall, and Williams burned the van. Id. at 1336-37, 1451.

Hall's and Williams' testimony was confirmed by other evidence at trial. James Roberts, who was outside the store at the time of the crime, testified to seeing Fluellen hit Espuet as Espuet was pulled into a van by Fluellen's co-defendants. Tr. 7/19/2002, at 1197-1203. Evidence from witnesses who were in the store at the time of the crime showed that several men entered with guns, directed them to lie down, and searched the store before abducting Powell and Espuet.[3] Tr. 7/17/2002, at 1061-69; Tr. 7/19/2002, at 1191-93. When Powell tried to flee, he was shot three times. Tr. 7/19/2002, at 1192-94. The store was left in disarray and the cash register and safe were open and empty of cash. Id. at 1172.

---

[1] Hall testified that the other men were Fluellen's co-defendants, James McIntosh and Rob Holloday, as well as Perry Lenlee and a man called Azzim. Tr. 7/22/2002, at 1311. The parties stipulated, however, that Lenlee was in jail at the time of the crime. Tr. 7/24/2002, at 1654-56.

[2] Williams testified that Rob Holloday shot Espuet in the head. Tr. 7/22/2002, at 1448.

[3] This evidence included testimony from a store patron and an interview of Powell taken the day after the incident. The parties stipulated that Powell would have testified to the facts stated in the interview if he had testified. Tr. 7/19/2002, at 1189-90.

The trial court sentenced Fluellen to life imprisonment for his first-degree murder conviction and lesser sentences for his other convictions, to run consecutive to each other, but concurrent to the life imprisonment term. See Crim. Dkt., at 5-7; 1/30/2004 Pa. Super. Op., at 1-2. On January 30, 2004, the Pennsylvania Superior Court affirmed Fluellen's judgment of sentence. See 1/3/2004 Pa. Super. Op. Fluellen did not seek review from the Pennsylvania Supreme Court. See Commonwealth v. Fluellen, 2422 EDA 2002, App. Dkt., at 4.

On August 20, 2004, Fluellen filed a pro se petition under Pennsylvania's Post Conviction Relief Act, 42 Pa. C.S. § 9541 et seq. ("PCRA"). See Crim. Dkt., at 9. The PCRA court appointed counsel for Fluellen and counsel filed a letter stating Fluellen's PCRA claims lacked merit. On June 5, 2007, the PCRA court denied Fluellen's PCRA petition. See id. at 12. Fluellen did not initially appeal. Instead, he filed a second PCRA petition in October 2007, seeking the reinstatement of his appellate rights and other collateral relief. See id. at 13; 10/29/2007 PCRA Pet., at 3. On October 28, 2008, the PCRA court reinstated Fluellen's appellate rights. See Crim. Dkt., at 14.

Fluellen filed a pro se notice of appeal, which was dated November 25, 2008, but postmarked inmate mail on December 8, 2008, and docketed on December 9, 2008. See 11/25/2008 Notice of Appeal Nunc Pro Tunc. Fluellen subsequently filed two counseled Statements of Matters Complained of on Appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), alleging claims of trial counsel ineffectiveness. See 3/23/3009 and 6/1/2010 Statements of Matters Complained of on Appeal. On April 22, 2009 and September 2, 2011, the trial court issued opinions finding Fluellen's ineffectiveness claims meritless. See 4/22/2009 PCRA Ct. Op., 9/2/2011 PCRA Ct. Op.

On October 5, 2012, the Superior Court quashed Fluellen's appeal as untimely. See 10/5/2012 Super. Ct. Op., at 5. Applying the prisoner mailbox rule, the court reasoned that Fluellen's notice of appeal was filed on its postmark date, December 8, 2008, eleven days after it was due.[4] Id. at 3-4. Fluellen did not seek review from the Pennsylvania Supreme Court. See Commonwealth v. Fluellen, 419 EDA 2009 App. Dkt., at 6. On November 16, 2012, Fluellen filed a third PCRA petition, seeking reinstatement of his appellate rights. See Crim. Dkt., at 18. That petition is pending. See id.

On November 29, 2012, Fluellen filed his timely Habeas Petition,[5] alleging: (1) the evidence was insufficient to support his second-degree murder conviction; (2) he was denied a fair trial when the trial court allowed the prosecution to admit Williams' police statement; and (3) his trial counsel was ineffective for failing to investigate, interview, and present testimony from two witnesses.

## DISCUSSION

I. Sufficiency of the Evidence for Fluellen's Second-Degree Murder Conviction

Fluellen argues that the evidence was insufficient to support his second-degree murder conviction because there is no evidence that he agreed or actively participated in Espuet's shooting or had a shared intent to shoot Espuet. Fluellen raised this claim on direct appeal and

---

[4] The Superior Court alternatively found that even if Fluellen's appeal had been timely filed, two of his claims were meritless and one was waived. 10/5/2012 Super. Ct. Op., at 4-5.

[5] Fluellen's conviction became final on March 1, 2004, thirty days after the Superior Court affirmed his judgment of sentence. He had one year from that date to file a federal habeas petition. See 28 U.S.C. § 2244(d)(1). That limitations period was tolled 172 days later when Fluellen filed his first PCRA petition on August 20, 2004, and it remained tolled until the conclusion of his PCRA proceedings on October 5, 2012. See 28 U.S.C. § 2244(d)(2); Lovasz v. Vaughn, 134 F.3d 146, 148 (3d Cir. 1998). Fluellen had 193 days as of that date, or until April 16, 2013, to file a habeas petition. His November 29, 2012 habeas petition therefore was timely.

4

the Superior Court concluded it was meritless. Because that decision was not objectively unreasonable under Section 2254(d), Fluellen is not entitled to relief on this claim.

A federal court can grant relief for habeas claims reviewed on the merits by a state court only if the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d). This is a "difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).

A state court ruling is "contrary to" clearly established Supreme Court precedent for the purposes of Section 2254(d)(1) "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [its] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000); see also Breakiron v. Horn, 642 F.3d 126, 131 (3d Cir. 2011). A state court decision constitutes an "unreasonable application" of Supreme Court precedent if it identifies the correct governing legal rule from Supreme Court decisions, but "unreasonably applies it to the facts of the particular state prisoner's case." Williams, 529 U.S. at 407-08. The state court's factual findings must be presumed correct unless the petitioner can show otherwise by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340-41 (2003).

In addressing Fluellen's sufficiency claim, the Superior Court explained that a defendant is guilty of second-degree murder if he was engaged as a principal or an accomplice in a separate felony during which the murder was committed. See 1/30/2004 Super. Ct. Op., at 4-5; see also

5

18 Pa. C.S. § 2502(b) (second-degree murder is a criminal homicide committed while a defendant was engaged as a principal or an accomplice in the perpetration of a felony); Commonwealth v. Melton, 178 A.2d 728, 731 (Pa. 1962) (all participants in a felony are equally guilty of felony murder when a killing by a felon occurs). The court then found, based on its review of the evidence, that there was little dispute that Fluellen "was engaged in [the felony crime of] robbery when Espuet was killed." 1/30/2004 Super. Ct. Op., at 5; see also 18 Pa. C.S. § 3701(a) (robbery occurs where defendant, in course of committing a theft, threatens another with or intentionally puts another in fear of immediate serious bodily injury). The court therefore concluded that "the killing of Espuet, regardless of [Fluellen's] intent to physically harm him, amount[ed] to murder in the second-degree [because] the malice from the robbery is imputed in the killing." 1/30/2004 Super. Ct. Op., at 6.

The Superior Court's decision was not contrary to, nor an unreasonable application of, clearly established United States Supreme Court precedent which holds that felony-murder statutes, such as Pennsylvania's second-degree murder statute, are constitutional. See Lockett v. Ohio, 438 U.S. 586, 602 (1978) ("States have authority to make aiders and abettors equally responsible, as a matter of law, with principals, or to enact felony-murder statutes. . . ."). The decision also was consistent with Supreme Court case law which holds that a conviction must be upheld if, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 433 U.S. 307, 319 (1979). Based on the abundant evidence showing Fluellen's active involvement in the robbery of Espuet's store, including Hall's and Williams' testimony and Roberts' identification of Fluellen during the crime, see supra p. 1-2, a rational trier of fact could have found that he was engaged as a principal and/or accomplice in the

6

robbery which resulted in Espuet's murder; thus, making him liable for second-degree murder. See United States, ex rel. Stukes v. Shovlin, 464 F.2d 1211, 1216 (3d Cir. 1972) (evidence sufficient to support felony murder conviction where it showed defendant acted in concert with participants of robbery and assault); United States v. Carter, 445 F.2d 669, 672 (D.C. Cir. 1972) (evidence sufficient to support defendant's felony murder conviction where it showed he participated in robbery of cab driver who was killed even if he did not intend to kill him). Fluellen's sufficiency claim therefore is meritless.

II.     The Trial Court's Admission of Williams' Prior Police Statement

Fluellen next argues that the admission of Williams' police statement denied him a fair trial because it "bolster[ed] the credibility of an admitted co-conspirator and accomplice with a prior consistent account of the incident." Habeas Pet. (doc. 1), at 10. This claim is not cognizable because it concerns an alleged state court evidentiary error and Fluellen fails to show how it deprived him of a fundamentally fair trial. See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) (Habeas review "is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); Bisaccia v. Attorney Gen. of N.J., 623 F.2d 307, 312 (3d Cir. 1980) ("evidentiary errors of state courts are not considered to be of constitutional proportion, cognizable in federal habeas corpus proceedings, unless the error deprives a defendant of fundamental fairness in his criminal trial") (citing Donnelly v. DeChristoforo, 416 U.S. 637, 642-43 (1974))

During Williams' cross-examination, Fluellen's counsel introduced Williams' police statement in an attempt to show that his testimony on direct examination about the crime was false. Tr. 7/22/2002, at 1465-72. Counsel suggested that when Williams made the statement, he "didn't even remember [the] robbery" and, thus, "did not really tell [the police] about [the]

7

robbery." Id. at 1468, 1470-71. On re-direct examination, the trial court permitted the prosecution to question Williams about the same police statement to rehabilitate his credibility. Id. at 1503-11. This was not "sufficiently unfair so as to raise the spectre of unconstitutionality for purposes of habeas corpus relief." Bisaccia, 623 F.2d at 312.

Prior consistent statements are admissible under both Pennsylvania and federal law as non-hearsay to rebut an express or implied charge of fabrication if the statements are made before the declarant had a motive to falsify. See Pa. R. E. 613(c); Fed. R. Evid. 801(d)(1)(B); Tome v. United States, 513 U.S. 150, 167 (1995); Commonwealth v. Busanet, 54 A.3d 35, 66 (Pa. 2012). Because Fluellen's counsel suggested during his cross-examination that Williams was truthful in his police statement and lying at trial, Williams' police statement was admissible as being made before he had a motive to falsify.[6] See United States v. Frazier, 469 F.3d 85, 89-90, 93-94 (3d Cir. 2006) (because defense attorney implied that witness told truth at suppression hearing, meaning that motive to fabricate occurred after the hearing and before trial, statements at hearing were properly admitted as prior consistent statements).

Furthermore, even if Williams had a motive to falsify his police statement, the admission of the statement did not deprive Fluellen of his constitutional right to a fair trial given the other substantial evidence of his guilt and the fact that defense counsel informed the jury during recross examination that Williams had reasons to falsify his police statement. See Tr. 7/22/2002, at 1514-16 (asking Williams why he remembered crime after arrests for federal charges for

---

[6] Fluellen's counsel also did not object to the statement because Williams had a motive to falsify it. Instead, he objected on the basis that the prosecutor was reading portions of the statement during her questioning. See Tr. 7/22/2002, at 1504-08. Thus, Fluellen waived any argument that the statement was erroneously admitted because Williams had a motive to falsify it. See Pa. R. A. P. 302(a) (issues not raised before trial court are waived).

8

which he could serve "300 years in prison"); Busanet, 54 A.3d at 67-68 (defendant not prejudiced by admission of prior consistent statement based on overwhelming evidence of his guilt and because defense made jury aware of witness's motive to falsify statement).

III. <u>Trial Counsel Ineffectiveness for Failing to Investigate, Interview, and Present Witnesses</u>

Fluellen asserts in his last claim that his trial counsel was ineffective for failing to investigate, interview, and call: (1) Perry Lenlee "to refute the testimony of the Commonwealth's main witness Travis Hall," and (2) Earl Brown "who told federal authorities Hall attempted to get him to present false information to the FBI to implicate [Fluellen] in crimes and give credence to Hall's testimony." Habeas Pet., at 12.

Although Fluellen raised this claim in his PCRA petition and his appeal from the denial of that petition, the Superior Court refused to consider it because his appeal was untimely filed. See supra at 4. This claim, therefore, is procedurally defaulted. See Coleman v. Thompson, 501 U.S. 722, 729-30 (1991) (Procedural default "doctrine applies to bar federal habeas when a state court declined to address a prisoner's federal claim because the prisoner had failed to meet a state procedural requirement" that is "independent of the federal question and adequate to support the judgment."); Griggs v. DiGuglielmo, No. 06-1512, 2007 WL 2007971, at *5 (E.D. Pa. July 3, 2007) (Yohn, J.) ("failure to present federal habeas claims to the state courts in a timely fashion results in procedural default").

Fluellen also fails to provide adequate reason to allow me to review this claim despite his default. See Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012) (court may consider merits of procedurally defaulted claim where a petitioner demonstrates: (1) a legitimate cause for the default and actual prejudice from the alleged constitutional violation; or (2) a fundamental miscarriage of justice from a failure to review the claim). Fluellen argues in his third PCRA

9

petition that his appellate rights should be reinstated because "[t]he record does not establish that [he] was given notice of the order of the PCRA Court [restoring his appellate rights]."[7] 11/16/2012 PCRA Petition, ¶ 18. The record, however, includes an October 31, 2008 letter from the PCRA court to Fluellen in which the court notified Fluellen of its October 28, 2008 order and the deadline for appealing from that order.[8] See 10/31/2008 Letter from the Honorable G. Overton to F. Fluellen. Although this letter was dated three days after the court's order, this three-day delay does not change the tardiness of Fluellen's notice of appeal because it was postmarked eleven days after it was due. See Notice of Appeal Envelope.

Even if Fluellen could show cause for his default, he cannot show that he was actually prejudiced by counsel's alleged ineffectiveness because it "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."[9] United States v.

---

[7] Fluellen also summarily argues in his Habeas Petition that if any of his claims are procedurally defaulted, "the U.S. Supreme Court's recent decision in Martinez v. Ryan, 132 S. Ct. 1309 (2012) applies as a result of PCRA counsel's incompetence." Habeas Pet., at 15. The Supreme Court held in Martinez that "a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." Martinez, 132 S. Ct. at 1320. Fluellen's default of his ineffectiveness claims, however, did not occur in his initial review collateral proceeding, during which these claims were raised and denied by the PCRA court. Rather, the default occurred when Fluellen sought to appeal from that denial. Fluellen therefore cannot establish cause for this default under Martinez. See id. (attorney errors in appeal from initial review collateral proceedings do not establish cause for default). Martinez also cannot apply to Fluellen's claims because it only allows a finding of cause for "substantial claim[s] of ineffective assistance of counsel" or claims with "some merit," see id. at 1318-19, and Fluellen's claims lack merit, see infra at p. 11-12.

[8] Fluellen also undisputedly received this letter because he enclosed it with his notice of appeal. See 11/25/2008 Notice of Appeal Nunc Pro Tunc as Per Ordered by the Court.

[9] This standard is similar to the requirements for establishing a federal claim of ineffective assistance of counsel. See Strickland v. Washington, 466 U.S. 688, 687 (1984) (to establish ineffectiveness, defendant must show that counsel's performance was deficient and that the

10

Frady, 456 U.S. 152, 170 (1982). Fluellen asserts his trial counsel should have investigated and called both Lenlee and Brown because they allegedly would have "refuted" Hall's credibility. Habeas Pet., at 12. In his October 29, 2008 Amended PCRA Petition, Fluellen argues that Lenlee would have testified that he could not have participated in the crime, as Hall testified, because he was in jail at the time. See supra n. 1; 10/29/2008 Am. PCRA Pet.; 4/5/2001 Aff. of P. Cullen, a/k/a P. Lenlee. The Commonwealth and the defense, however, stipulated to this evidence at trial. See Tr. 7/24/2002, at 1654-56 (stipulating that Lenlee would have testified that he was in jail at time of crime). Trial counsel, therefore, could not have been deficient for failing to call Lenlee and Fluellen cannot establish that such non-deficient actions prejudiced him at trial. See Strickland, 466 U.S. at 687; Real v. Shannon, 600 F.3d 302, 310 (3d Cir. 2004) (counsel cannot be ineffective for failing to raise a meritless claim).

Similarly, Fluellen cannot show he was prejudiced by counsel's failure to call Brown because Brown's purported testimony would have been inadmissible. Fluellen argues Brown would have testified that Hall directed him to falsely testify to the crime so that both he and Hall could receive reduced sentences on other charges. See Habeas Pet., at 12; 10/4/2010 Aff. of E. Brown. However, this testimony – about the truth of Hall's purported out-of-court statements to Brown – would have been inadmissible under Pennsylvania's hearsay rules. See Pa. R. E. 801, 801. Moreover, even if this testimony was admissible, it was cumulative of other evidence elicited by the defense suggesting that Hall had an incentive to testify falsely for the Commonwealth to receive reduced sentences. See Tr. 7/22/2002, at 1391-1400, 1413-17 (questioning Hall about his plea agreement for federal robbery convictions). Fluellen therefore

---

deficient performance prejudiced the defense, meaning the "errors were so serious as to deprive the defendant of a fair trial").

cannot show that his counsel was deficient for not calling Brown or that he was prejudiced by counsel's actions. See Barnes v. Burge, 372 F. App'x 196, 201 (2d Cir. 2010) (no ineffectiveness or prejudice from counsel's failure to call witnesses where their testimony would have been inadmissible hearsay).

Fluellen also cannot establish that the denial of this claim results in a fundamental miscarriage of justice because neither Lenlee's nor Brown's testimony would have demonstrated that he was actually innocent of the crimes. See Schlup v. Delo, 513 U.S. 298, 321-24 (1995) (to establish fundamental miscarriage of justice, petitioner must present "new reliable evidence" of his actual innocence, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence").

This claim must be denied as procedurally defaulted and meritless.[10]

BY THE COURT:


/s/ Timothy R. Rice
TIMOTHY R. RICE
U.S. MAGISTRATE JUDGE

---

[10] Because trial counsel's failure to call Lenlee and Brown was neither deficient nor prejudicial, his ineffectiveness claims also are meritless under federal ineffectiveness standards. See supra n. 9.